UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Judge Frederick J. Kapala |
| | ) | Case No. 07 CR 50067 |
| JOAN JARRETT | ) | |

**DEFENDANT'S MEMORANDUM ON SENTENCING**

Now comes JOAN JARRETT by TERENCE F. MACCARTHY of the FEDERAL DEFENDER PROGRAM and its attorney HANEEF OMAR who presents the Defendant's Memorandum on Sentencing. Ms. Jarrett agrees with the advisory guideline calculations as presented in the Pre-Sentence Investigation report ("PSI") yet seeks a downward departure under §5K2.0 based on her overstated risk of recidivism as well as a departure pursuant to §5H1.1 because she is elderly. However, a sentence sufficient but not greater than necessary to satisfy 18 U.S.C. §3553(a) is a sentence of probation considering the Defendant's history, the nature of the offense, and providing adequate deterrence among other factors. Ms. Jarrett states as follows:

I. A sentence of probation is appropriate considering Ms. Jarrett's history and characteristics

A. Factual Background

Joan Jarrett (nee, Heriaud) is a sixty-two year old woman who pleaded guilty to violating 18 U.S.C. §641 for her failure to inform the social security administration that

her neglectful and abusive husband had returned to live with her. Ms. Jarrett understands being neglected as her family always informed her that she was an accident and was never wanted as a child. (PSI, at 193). Her brother was ten years older than she was and the family only cared for him. (PSI, at 191). Feeling unwanted at home, Ms. Jarrett left high school at the age of eighteen and married her first husband. (PSI, at 197). She had four children of her own from this marriage which dissolved in 1974. Ms. Jarrett married Calvin Jarrett in 1975 who was an alcoholic and physically abusive. (PSI, at 227, 245).

      Ms. Jarrett's family and financial troubles pushed her to develop bulimia and to become addicted to pain medication. (PSI, at p. 11). Ms. Jarrett's medical records reveal that in the late 1980's she visited emergency rooms frequently to obtain pain medication. The medical records show that she was in fact "well known for pain medication seeking behavior." (PSI, at 329). When asked about her eating disorder and pain medication addiction in the late 80's Ms. Jarrett stated that "life and reality were easier if she could sleep the day away." (PSI, at 334).

      Around the time when the offense of conviction occurred it is apparent that Ms. Jarrett was suffering from an extreme emotional and psychological distress. Her family had all but disowned her at this point. She was never written into the family will and the PSI reflects that her family officially disowned her in 2002. This was likely, following Ms. Jarrett's misappropriation of her brother's credit card. Ms. Jarrett regrets this offense and has stated that she took her brother's credit card after her parents

willed all of the family money to her brother leaving her with nothing. The strife between her family remained so severe that she was not even allowed to attend her parents' funerals. (PSI, at 202).

Ms. Jarrett was under intense psychological and emotional pressure from her struggling second marriage and her ever present strife with her siblings that she needed assistance simply to help her lived. Ms. Jarrett never lived lavishly. Before her husband left her and once she was receiving social security she only had enough money for a dilapidated roof over her head and food to eat. Ms. Jarrett has survived on food stamps and assistance through the state of Illinois to pay her gas bill to heat her home. She is currently staying in a residence with a fair market value of $36,585.

In 1990 Ms. Jarrett lawfully received social security after her second husband left her with her four kids. Ms. Jarrett had no marketable skills to obtain a job as she had left school at a young age and was caring for four children. The Supplemental Security Income ("SSI") she received was a lifeline that helped her survive. Her husband stumbled home sporadically some time later that year. He used Ms. Jarrett's residence more as a place to sleep off a hangover than as a home. He kept a bedroom separate and apart from Ms. Jarrett and although he worked odd jobs he never shared any money with his estranged wife.[1] Ms. Jarrett couldn't depend on this man for anything and could not determine when or if he would come home. In addition to being alcoholically

---

[1] The pair never shared children together thus it is likely that Mr. Jarrett felt no responsibility to support the Defendant's children from a previous relationship.

dependant and physically abusive, Ms. Jarrett's husband gambling with whatever money he had. (PSI, at 341).

The instability that Ms. Jarrett lived with on a daily basis caused her to never contact the Social Security Administration. Although her husband came and went and had his own bedroom to sleep in, Ms. Jarrett never received any money from him. The man received a worker's compensation check in the amount of about $36,000 and blew the entire check between the months of October and December on liquor, gambling, and a $9,000 car. He never gave Joan a dime to pay bills, the rent, or to buy food. Ms. Jarrett recalls asking him for help to which he said 'she was not getting a thing and if she keeps asking he would smack her.' This instability endured until her husband fell ill and was forced to stay closer to Joan so she could care for him.

Ms. Jarrett has been honest, contrite, and remorseful for her actions of not reporting to the Social Security Administration and simply prays that this Court find that a sentence sufficient but not greater than necessary to satisfy 18 U.S.C. §3553(a) is a sentence of probation.

      B.    Ms. Jarrett's age characteristic is relevant in determining whether a §5H1.1 departure is warranted considering probation is the appropriate sentence.

Ms. Jarrett at the age of 62 suffers from numerous ailments including grand mal seizures and recently had a heart attack making incarceration unreasonably difficult when an alternative sentence is equally effective. Sentencing Guidelines §5H1.1 makes

reference to a court's consideration of the defendant's age in formulating a sentence. Specifically, the guideline states as follows:

> Age (including youth) is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

USSG §5H1.1. Ms. Jarrett suffers from several ailments due to her old age that make her infirm for incarceration. Ms. Jarrett was diagnosed with a seizure disorder in the late 1980's and takes Tegretol medication for them. (PSI, at 256). She has also been diagnosed with a long list of ailments some of which include Dupuytren's Contracture, hysterectomy, hernia, high blood pressure, high cholesterol, atrial fibrillation, mitral valve regurgitation, single vessel coronary artery disease with stenting, gastrisis, duodenitis, gastroesophageal reflux disease, hemorrhoids, chronic abdominal pain, hypokalemia, depression, anxiety and somatization among others. (PSI, 286-297). Ms. Jarrett has also been regularly visiting a psychologist to help her cope with the mental anguish she has suffered her entire life.

  Such a lengthy medical history at Ms. Jarrett's age means she is only more likely to acquire more illnesses or at least experience aggravation of her current illnesses meaning another form of punishment is more appropriate than incarceration. Ms. Jarrett should be sentenced to a lengthy term of probation to ensure that she will remain compliant with the law. Probation will also allow Ms. Jarrett to continue to receive the medical and psychological treatment she desperately needs.

    II.    This Court should disregard the sentencing guidelines and find that Ms. Jarrett presents a much reduced risk of recidivism than other defendants and sentence her to a term of probation.

The Supreme Court has recently reiterated its position that sentencing judges are free to disregard the United States Sentencing Guidelines and impose a sentence it deems appropriate. *Gall v. United States*, 06-7649; *Kimbrough v. United States*, 06-6330; *Watson v. United States*, 06-571.

    A.    This Court has the authority to find an appropriate sentence is a term of probation.

The Supreme Court and Congress require the district court to sentence in accordance with 18 U.S.C. § 3553(a). *Rita*, 127 S.Ct. at 2469 (explaining that district judges are required "to filter the Guidelines' general advice through 3553(a)'s list of factors"); *Booker*, 543 U.S. at 259-60; *see also United States v. Wachowiak*, 2007 U.S. App. LEXIS 18234, at *9-10 (7th Cir. Aug. 1, 2007) (holding that after *Booker*, the Guidelines are advisory, but application of § 3553(a) is mandatory). The Supreme Court held in *Rita* that sentencing judges are required "to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing" in § 3553(a). *Rita*, 127 F.3d at 2463. This is known as 3553(a)'s parsimony provision, and it serves "as the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660,

667 (6th Cir. 2006). The purposes of sentencing include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training.

18 U.S.C. § 3553(a)(2); *Booker*, 543 U.S. at 260. Section 3553(a)(1) directs sentencing courts to also consider the nature and circumstances of the offense and the history and characteristics of the defendant.

Joan Jarrett being a 62 year old woman has a much reduced risk of recidivism. A sentence of probation nonetheless reflects the seriousness of the offense, provides just punishment, adequate deterrence, and protects the public from future crimes of the Defendant.

B. Ms. Jarrett's risk of recidivism is overstated by her criminal history category of III warranting a 5K2.0 reduction.

Ms. Jarrett's applicable guideline range of 15-21 months is based on her Category III criminal history and an offense level of 12. (PSI, at 3, 16). In determining a defendant's criminal history category and appropriate sentencing guideline range, one of the considerations in formulating the guidelines was protecting the public from further crimes of the defendant while assessing the likelihood of recidivism and future criminal behavior. See Introductory Commentary, Ch. 4 Part A - Criminal History. It would normally be expected that a person with Ms. Jarrett's criminal history would be a

moderate risk of re-offending. However, her risk of recidivism is quite low. Ms. Jarrett's age, her successful completion of probation in the past, and her current stable living arrangement with her granddaughter demonstrate that she does not pose the same risk of recidivism as others who are in her criminal history category.

Section 5K2.0 allows a sentencing court to impose a sentence outside the applicable guideline range if the court finds "that there exists a[n]…mitigating circumstance of a kind, or to a degree, not adequately taken into consideration… in formulating the guidelines that should result in a sentence different from that described." In furtherance of §5K2.0, the guidelines encourage courts to depart downward from the guideline range when the defendant's criminal history category significantly overstates the seriousness of her prior conduct.

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.
>
> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. The court may conclude that the defendant's criminal history was significantly less than that of most defendant's in the same criminal history category, and therefore consider a downward departure from the guidelines.

§4A1.3 (Policy Statement). *See United States v. Abbott*, 30 F.3d 71, 72-73 (7th Cir. 1994).

A departure is warranted in Ms. Jarrett's case as her risk of recidivism is far lower than that of typical Category III offenders. Ms. Jarrett's age, her successful completion of probation in the past, and her current stable living arrangement with her

granddaughter are not factors consistent with most category III offenders.

A review of her criminal history reflects that her criminal history score is quadrupled from 1 point to 4 based on only the 2005 retail theft. The facts of that case reveal that at the time Ms. Jarrett's husband was extremely ill. The couple was poor and starving. The items Ms. Jarrett attempted to steal display that she needed food and medicine to survive. Specifically, Ms. Jarrett stole deli meat, cough syrup, cough drops, pain relief capsules, cat food, dog food, and candy. (PSI, at 134). Ms. Jarrett successfully completed a term of probation for this offense. Her husband passed away in 2006 and she is currently receiving death benefits and food stamps. Along with the assistance of her granddaughter who now lives with her, Ms. Jarrett is able to support herself without stealing food or medicine.

The criminal history Ms. Jarrett has stems from her severe poverty. Because she is receiving benefits and has the aid of her daughter she is a less likely risk of recidivism than most category III offenders.

Wherefore, in light of the aforementioned Ms. Jarrett respectfully requests a term of probation in this case.

Dated at Rockford, Illinois, March 24, 2008.

          Respectfully Submitted
          JOAN JARRETT, Defendant,


          ___/s/_____
          Haneef Omar

                                              Attorney for Defendant

Federal Defender Program
202 W. State St. Suite 600
Rockford, IL 61101
[815] 961-0800
[815] 961-0813 (fax)