UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 07 CR 50067 |
| ) | Judge Frederick J. Kapala |
| JOAN JARRETT ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MEMORANDUM ON SENTENCING AND MOTIONS FOR DOWNWARD DEPARTURE AND VARIANCE

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds to defendant's Memorandum on Sentencing ("Memorandum") seeking downward departures[1] because of her age and an alleged "overstated risk of recidivism," along with a request for a variance pursuant to *United States v. Booker*, 543 U.S. 220 (2005), claiming that a sentence of probation would be sufficient to satisfy the factors set forth in 18 U.S.C. § 3553(a). While the Court has discretion to grant the defendant's motions for a downward departure and a *Booker* variance, the government submits the defendant should be sentenced within the applicable range.

**A.    The Defendant's Age**

The age of a defendant is not ordinarily relevant to a decision to depart and is a "discouraged" factor. *See* USSG §5H1.1; and *Koon v. United States*, 518 U.S. 81, 95 (1996)

---

[1] Although the Seventh Circuit has held that Guidelines "departures" are no longer relevant after *Booker*, in *Rita v. United States*, 127 S. Ct. 2456, 2461, 2465, 2468 (2007), the Supreme Court referred multiple times to "departures" from the Guidelines as a category distinct from § 3553(a) variances. However, even after *Rita*, the Seventh Circuit has continued to express the view that departures are obsolete. *United States v. Dale*, 498 F.3d 604, 611 n.6 (7th Cir. 2007).

("discouraged factors" are those considered "not ordinarily relevant" by the Guidelines). Consequently, downward departures under Guideline §5H1.1 are rare.

In seeking a downward departure, the defendant bears the burden of proving that she meets the criteria for that adjustment. *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir. 1996). Guideline §5H1.1 allows for age to be a reason for a downward departure where the defendant "is elderly and infirm" and where an alternative "form of punishment such as home confinement might be equally efficient as and less costly than incarceration." However, being 62 is hardly "elderly," and while the PSR describes the defendant's various medical conditions, she is not "infirm."[2] While the defendant claims her medical condition (grand mal seizures and a recent heart attack) "mak[e] incarceration unreasonably difficult," she does not claim, nor can she, that the Bureau of Prisons is incapable of caring for her.

---

[2] Combinations of equally or arguably more serious ailments have been found not to constitute an "extraordinary physical ailment" for purposes of a downward departure. *See, e.g., United States v. Tyler*, 125 F.3d 1119, 1123 (7th Cir. 1997) (contracting polio at the age of two, being confined to a wheelchair for over 30 years, multiple surgeries related to polio, having a heart attack and by-pass surgery while awaiting sentencing, and taking medication for high blood pressure not so extraordinary as to warrant a downward departure); *United States v. Eagle*, 133 F.3d 608, 611 (8th Cir. 1998) (glaucoma, septic arthritis, uncontrolled hypertension, avascular necrosis, and degenerative arthritis in both hips requiring total hip replacement did not warrant a downward departure); *United States v. Guajardo*, 950 F.2d 203, 208 (5th Cir. 1991) (cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency did not justify downward departure under § 5H1.4); *and United States v. Tolson*, 760 F.Supp. 1322, 1330-31 (N.D. Ind. 1991) (denial of downward departure for 60 year old defendant suffering from onychomycosis of his fingernails and toenails, peripheral neuropathy, syncopal episodes, circulatory problems, arthritis, and emphysema, as, although extensive, not constituting an extraordinary physical impairment under § 5H1.4).

Moreover, while the age and condition of the defendant may bear upon her own likelihood of recidivism, they do not address the equally important issues of deterrence to both the defendant and to others. *United States v. Bullion*, 466 F.3d 574, 576 (7th Cir. 2006). As the Seventh Circuit noted, "Older criminals do not receive sentencing discounts." *United States v. Krilich*, 257 F.3d 689, 693 (7th Cir. 2001).

**B.   The Defendant's Criminal History and Risk of Recidivism**

The defendant next asks the Court to "disregard the sentencing guidelines and find that [she] presents a much reduced risk of recidivism...." While the government agrees that the Sentencing Guidelines are advisory only, to "disregard" them would be contrary to 18 U.S.C. §3553(a)(4), which requires precisely the opposite – the Court must "consider" them. "In sentencing a defendant, a district court **begins** by calculating the correct guidelines range. *Gall v. United States*, — U.S. —, 552 U.S. —, 128 S.Ct. 586, 596 (2007) (citing *Rita v. United States*, *supra*) (emphasis added).

Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[3] In order to determine the "particular" sentence to impose, the court must consider the familiar statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing

---

[3] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

Guidelines, and another is the Commission's policy statements. § 3553(a)(4), (a)(5). For two reasons, this court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the *sole* factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker*, 543 U.S. at 250 ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The only way to prevent widespread unwarranted disparities is to give serious consideration to the Guidelines.

Second, the Guidelines generally deserve serious consideration because they are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita*, 127 S.Ct. at 2465, and that there is

4

"broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

In the event that this court exercises its discretion to sentence outside the advisory range, there are guideposts for evaluating what the extent of the deviation should be and when a non-Guidelines sentence will be deemed unreasonable on appeal. These guideposts are set forth in Supreme Court and Seventh Circuit cases.

First, the Supreme Court instructs that it is "clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, *supra*. The degree of the deviation from the advisory Guidelines range is relevant in choosing the particular sentence:

> If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

*Id.*

In contrast to the significant and uniquely-personal mitigating facts in *Gall*, the Seventh Circuit warns that major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *Wachowiak*, 496 F.3d at 754. Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.* at 750. To be sure, these are only guides and not bright-line rules for assessing reasonableness, but they are helpful in preventing excessive sentencing disparities.

The defendant claims that her risk of recidivism is overstated by her Criminal History Category of III, and that this alone warrants a Guideline §5K2.0 reduction.[4] The defendant does not claim that she did not commit the former offenses. Nor does she deny that all of her "countable" criminal convictions took place after she turned 56. Within approximately 3½ years of committing a form of Social Security fraud, the defendant committed and was

---

[4] Although the defendant references Guideline §5K2.0 as the basis for her motion for a departure and request for a variance, Guideline §4A1.3(b) addresses departures where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes," *i.e.*, recidivism. Whether analyzed under §5K2.0 or §4A1.3(b), the defendant's motion/request should be denied. There certainly is no real claim, much less "reliable information," that Category III overrepresents her past criminal conduct. She has two prior felony convictions to accompany her two misdemeanor traffic offenses, all committed within the short span of approximately 4½ years. PSR at 90-146.

convicted of two counts of felony theft, one count of felony retail theft, driving an uninsured vehicle, and driving without a valid driver's license.[5] This hardly supports her position.

**C.    The Court Should Deny the Motions for a Downward Departure and Request for a *Booker* Variance.**

Finally, even if the defendant is able to establish that she is eligible for a downward departure, it is wholly within the Court's discretion whether to grant the motion. *United States v. Williams*, 202 F.3d 959, 964 (7th Cir. 2000). The government asks that the Court deny the motion. Similarly, for the reasons set forth above, the government asks that the Court decline to vary from the Guidelines and impose a sentence below the applicable range.

## Conclusion

For the reasons set forth above, this Court should deny the defendant's motion for a downward departure and request for a variance below the Guidelines range.

        Respectfully submitted,

        PATRICK J. FITZGERALD
        United States Attorney

BY:    /s/ John G. McKenzie
        JOHN G. McKENZIE
        Assistant United States Attorney
        308 West State Street - Room 300
        Rockford, Illinois  61101
        (815) 987-4444

---

[5] While the defendant claims "her successful completion of probation in the past" supports her request, the PSR notes that a petition to vacate her probation was filed alleging not only the present federal offense, but other violations of probation as well. See PSR at 126, 140-142

## **CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**United States' Response to Defendant's
Memorandum on Sentencing and Motions
for Downward Departure and Variance**

was served on April 1, 2008, pursuant to the district court's ECF system as to ECF filers, if any, and a copy was hand-delivered on April 1, 2008, to the United States Probation Office.

        */s/ John G. McKenzie*
JOHN G. McKENZIE
Assistant United States Attorney
308 West State Street - Room 300
Rockford, Illinois 61101
(815) 987-4444